UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GINI SERVICES, LLC et al., | Case No.2:22-CV-1135  JCM (DJA) |
| Plaintiff(s), | |
| v. | ORDER |
| PERLE TECHNOLOGIES, INC., | |
| Defendant(s). | |

Presently before the court is plaintiffs Gini Services, LLC ("Gini") and W. Jeffrey Knowles's (collectively "plaintiffs") motion for default judgment. (ECF No. 17). Defendant Perle Technologies, Inc. ("Perle") did not respond and the time to do so has passed. For the reasons stated below, plaintiffs' motion is granted.

**I.     Background**

This action arises out of a business dispute between Gini and Perle. The following allegations derive from plaintiffs' complaint. (ECF No. 1).

Gini and Perle are medical supply companies. (*Id.* at 3). Gini entered into an agreement with World Reach Health ("WRH") to purchase COVID-19 test kits, which would be supplied to Pointward.[1] (*Id.*). Uttam Reddy and Mendel Bannon allegedly contacted WRH on behalf of Perle and represented that Perle was partnered with Gini. (*Id.* at 4). They also represented that Gini approved an agreement where Perle would pay WRH for the test kits. (*Id.*). WRH received Perle's

---

[1] Pointward agreed to wire the funds for the test kits to WRH. (*See* ECF No. 1).

payment before Pointward's wire was received. (*Id.*).

The test kits were mistakenly delivered to Gini's warehouse in Norwalk, California. (*Id.* at 5). Gini allegedly received "irate and tacitly threatening calls" from Perle's customers demanding access to the test kits. (*Id.*). Further, because Perle allegedly oversold the test kits it paid for, Gini offered to fulfill this shortage. (*Id.* at 6). Gini incurred substantial costs delivering the tests kits to Perle's customers and suffered lost profits because Pointward and WRH declined to do future business with Gini. (*Id.* at 7-9).

Plaintiffs' complaint charges defendant with: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) defamation per se, (4) intentional interference with contractual relations, and (5) unjust enrichment/quantum meruit. (*Id*. at 9-12). Perle was served with the summons and complaint in September 2022, and failed to appear or respond to the complaint. (ECF No. 9).

On October 10, 2022, plaintiffs moved for entry of clerk's default against defendant. (ECF No. 10). The clerk of court entered default on October 25, 2022. (ECF No. 12). This court denied plaintiffs' first motion for default judgment, finding that they failed to support their request for damages. (ECF No. 16). Plaintiffs now bring their second motion for default judgment. (ECF No. 17).

**II.    Legal Standard**

Obtaining a default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies

to the clerk of the court as required by subsection (a) of this rule."

The choice whether to enter a default judgment lies within the discretion of the court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a default judgment, the court should consider the seven factors set forth in *Eitel*: (1) the possibility of prejudice to plaintiff if default judgment is not entered; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. 782 F.2d at 1471–72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(d).

**III.     Discussion**

In its order on plaintiffs' previous motion, the court noted that default judgment was appropriate in this matter but for plaintiffs' insufficient request for damages. The court will not disturb those findings and expressly incorporates its analysis of the *Eitel* factors as set forth in the previous order. (*See* ECF No. 16). After considering the instant motion and attached exhibits, the court finds that plaintiffs have now properly supported their request for damages. (*See* ECF No. 17).

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for default judgment (ECF No. 17) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs are awarded $1,477,305.66 in damages and $350,607.13 in pre-judgment interest through December 11, 2024, plus the per diem amount until

1 the date default judgment is entered pursuant to NRS 17.130(2).  Thereafter, plaintiffs are entitled
2 to post-judgment interest from the date the judgment is awarded, until the judgment is satisfied at
3 the federal rate pursuant to 28 U.S.C. § 1961.
4
5       The clerk of court is INSTRUCTED to enter judgment in favor of plaintiffs, consistent
6 with this order, and close this case.
7       DATED June 6, 2025.
8
9                                       _____
10                                      UNITED STATES DISTRICT JUDGE